UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | No. 2:14-cv-01997-KJM-CKD |
| Plaintiff, | |
| v. | ORDER |
| JULIO TAMAYO, et al., | |
| Defendants. | |

    Plaintiff J & J Sports Productions, Inc. filed this action against defendants Julio and Ruben Tamayo, each individually and doing business as Zitio's Bar and Grill (Zitio's), making claims arising from an allegedly unauthorized transmission of a cable program, based on the federal Cable Communications Act, 47 U.S.C. § 553 or in the alternative 47 U.S.C. § 605, common law conversion, and California Business and Professions Code section 17200, *et seq.* (the UCL). ECF No. 1. The matter is before the court on plaintiff's motion for summary judgment. Mot., ECF No. 18. Defendants opposed and filed a cross-motion for summary judgment. Opp'n, ECF No. 23.[1] Plaintiff replied. Reply, ECF No. 33. The court submitted the matters without oral argument.

---

[1] On February 2, 2016, the court addressed the issue of defendants' untimely cross-motion for summary judgment, allowing the cross-motion, plaintiff's supplemental opposition, and

1

As explained below, the court DENIES plaintiff's motion for summary judgment and GRANTS IN PART AND DENIES IN PART defendants' cross-motion for summary judgment.

I. BACKGROUND

    A. Evidentiary Objections

        1. Matta Declaration

Plaintiff objects to Jacob Matta's declaration, arguing defendants did not disclose him as a witness. Rule 37(c) of the Federal Rules of Civil Procedure excuses a party's failure to make required disclosures if that party can show the failure was "substantially justified" or "harmless." *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008) (citation omitted).

In cases, as here, where a party opposing summary judgment has relied on undisclosed witnesses, the Ninth Circuit has held the "[d]isruption to the schedule of the court" that results from allowing such witnesses "is not harmless." *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) (district court did not abuse its discretion in excluding such testimony); *see also Reynoso v. Constr. Protective Servs.*, 2008 U.S. App. LEXIS 19681, at *8-*9 (9th Cir. Sept. 16, 2008)) (when late disclosure will most likely require a new briefing schedule and perhaps reopening discovery, rather than simply set a trial date, failure to disclose is not harmless).

Here, the initial expert witness disclosure deadline was March 4, 2015. ECF No. 15. Defendants have not made any disclosures, before or after that date. ECF No. 33-3. Defendants also have not provided any explanation to show their earlier failure to disclose Matta was either substantially justified or harmless. Plaintiff's objection to Jacob Matta's declaration is therefore SUSTAINED and Jacob Matta's declaration is STRICKEN.

---

defendants' reply, if any. ECF No. 35. Plaintiff filed a supplemental opposition on February 9, 2016. ECF No. 36. Defendants did not reply.

2.   Hearsay

Plaintiff objects to most of the content of the declarations of Julio Tamayo and Ruben Tamayo as hearsay, arguing neither was present at Zitio's on the date of the alleged unlawful cable interception.

It is undisputed Julio Tamayo and Ruben Tamayo were not present at Zitio's at the relevant time.  Therefore, they have not established any personal knowledge of events that day. However, with respect to instructions given to their employees, cover charges and any advertisement of the cable program, it is plausible for the Tamayos, as Zitio's owners, to be able to testify at trial regarding this information.  Accordingly, to the extent the statements in the declarations from Julio Tamayo and Ruben Tamayo address what happened on site at Zitio's at the time of the alleged unlawful interception, plaintiff's objections are SUSTAINED.  To the extent their statements concern instructions to their employees, cover charges and advertisement, plaintiff's objections are OVERRULED.

3.   Immateriality

Plaintiff objects to the statement in the Tamayos' declarations, that "[t]he employees at [Zitio's] were instructed to not show anything on the TV except through programming . . . purchased through the commercial TV account" as immaterial.  Julio Tamayo Decl. ¶ 2, ECF No. 23-3; Ruben Tamayo Decl. ¶ 2, ECF No. 23-4.  To the extent the court considers this information below, the court deems it to be material and not hearsay.  *United States v. Sierra Pac. Indus.*, 879 F. Supp. 2d 1096, 1103 (E.D. Cal. 2012).  Plaintiff's objection grounded in materiality is OVERRULED.

B.   Undisputed Facts

The court has determined the facts set forth below are undisputed unless otherwise stated.

Plaintiff was granted the exclusive commercial distribution rights to "The One," the Floyd Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight Championship Fight Program (the Program).  Defs.' Resp. to Pl.'s Stmt. of Undisputed Facts (DUMF) no. 1, ECF No. 23-1.  The Program consisted of a broadcast of the championship bout on September 14,

3

1    2013.  *Id.*  The Program included a fight between Danny Garcia and Lucas Matthyssee.  Eggert
2    Decl., ECF No. 16-2 at 4.
3           Defendants Ruben Tamayo and Julio Tamayo are the owners, operators, managers
4    and licensees of the commercial establishment doing business as Zitio's, operating at 11 East
5    Street, Woodland, California 95576, with a maximum capacity of 98 people.  DUMF no. 2; Pl.'s
6    Resp. to Defs.' Stmt. of Undisputed Facts (PUMF) no. 1, ECF No. 33-1.  Ruben and Julio
7    Tamayo were not present at the time of the alleged transmission of the Program.  *Id.*
8           The employees at Zitio's were instructed not to show anything on the televisions in
9    the bar and grill except through programming purchased through the commercial television
10   account.  PUMF no. 4.  In fact, the Program was not shown on any of the televisions in Zitio's.
11   PUMF no. 3; Eggert Decl., ECF No. 16-2 at 5 (of total 8 TVs observed, 0 were displaying
12   Program).  There was no cover charge on September 14, 2013 and no advertisement that the
13   Program would be played at Zitio's.  PUMF nos. 12, 13; Eggert Decl. at 4.  Only four people total
14   were in Zitio's at the time the Program was running on the laptop.  Eggert Decl. at 2.
15          Defendants aver that on September 14, a patron watched the Program on his laptop
16   computer.  Resp. to Req. for Admis. Nos. 13, 28, ECF No. 30-2.  Defendants say they did not
17   authorize, permit, or have knowledge of the showing of the Program, and that the patron viewed
18   the Program on his own laptop over the internet.  Resp. to Req. for Admis. Nos. 28, 46; Julio
19   Tamayo Decl. ¶ 3; Ruben Tamayo Decl. ¶ 3.  Jennifer Eggert, an investigator for plaintiff,
20   observed and documented the Program being played inside Zitio's on September 14.  Eggert
21   Decl. at 2.  In Ms. Eggert's report, she included the following unadorned statement: "The
22   employee advised me not to say anything about the fight being shown because he was not
23   supposed to have it."  *Id.* at 5.  While Ms. Eggert included details such as the laptop broadcast's
24   identifying "Danny Garcia as the winner, [but] the announcers were not shown . . . and they were
25   recapping the fight," she does not identify by name the "employee" who told her not to say
26   anything.  *Id.*  In a separate section of her report, she does describe without naming someone she
27   identifies as the "Manager."  *Id.*
28

4


Plaintiff did not authorize defendants to broadcast the Program, and defendants never purchased a commercial license from plaintiff, which would have cost $2,200 for an establishment the size of Zitio's.  DUMF nos. 5, 7.

Zitio's has commercial accounts with the telephone, electric, gas, water, and garbage companies, and is a party to the commercial lease for the space it occupied as of Saturday, September 14, 2013.  Resp. to Req. for Admis. Nos. 47–53.

II.     LEGAL STANDARD

Summary judgment is appropriate where the court is satisfied "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  When the court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in . . . [the] [non-movant's] favor." *Id.* at 255.

The moving party bears the initial burden of demonstrating to the court "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party satisfies this initial burden, the burden then shifts to the non-moving party, who "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show [ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In resolving the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

"[T]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements

of Federal Rules of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (citing *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001)).  In other words, when evidence is not presented in an admissible form in the context of a motion for summary judgment, but it may be presented in an admissible form at trial, a court may still consider that evidence. *Id.* at 1037 (considering evidence from a diary, notwithstanding the defendant's hearsay objections, in the context of a motion for summary judgment because the contents of the diary were "mere recitations of events within the [plaintiff/appellant's] personal knowledge and, depending on the circumstances, could be admitted into evidence at trial in a variety of ways").

III.     CABLE COMMUNICATIONS ACT (CCA)

"The Cable Communications Act imposes strict liability under 47 U.S.C. §§ 553 and 605." *Don King Prods./Kingvision v. Lovato*, No. 95-2827, 1996 WL 682006, at *3 (N.D. Cal. 1996); *J & J Sports Prods., Inc. v. Delgado*, 10-2517-WBN-KJN, 2012 WL 371630, at *3 (E.D. Cal. 2012).  Section 553 provides:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1). Section 605 provides, in relevant part, that it is unlawful for any person, who is not authorized by the sender, to "intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of the intercepted communication to any person." 47 U.S.C. § 605(a). "The term 'radio communication' or 'communication by radio' means the transmission by radio of writing, signs, signals, pictures, and sounds of all kinds . . . ." 47 U.S.C. § 153(40).

The strict liability aspect of sections 553 and 605 requires that, to prevail, a plaintiff must prove a defendant (1) intercepted or received without authorization, and (2) divulged or published, or aided the divulging or publishing of, a communication by the plaintiff (3) over a cable system, under section 553, or by wire or radio, under section 605.[3] *See Cal.*

---

[3] As this court has acknowledged, but not resolved, there is a split of authority regarding the scope of § 605 and whether a single act of interception can violate both §§ 553 and 605. *Joe*

*Satellite Sys. v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985); *Joe Hand Promotions, Inc. v. McInnis*, No. 10-1614, 2011 WL 1740109, at *6 (N.D. Cal. May 5, 2011); *J & J Sports Prods., Inc. v. Cortes*, No. 08-04287, 2009 WL 801554, at *2 (N.D. Cal. Mar. 25, 2009). The court refers to the third factor as the "signal source" factor below.

A "[p]laintiff need not establish 'willfulness' in order to establish liability" under the CCA. *McInnis*, 2011 WL 1740109, at *7. Whether defendants knew, authorized, or received any profit or financial benefit from the alleged signal piracy on September 14, 2013 is irrelevant, if the defendants engaged in any piracy. *See Joe Hand Promotions, Inc. v. Albright*, No. 11-2260, 2013 WL 2449500, at *3 (E.D. Cal. June 5, 2013); *see also J & J Sports Prods., Inc. v. Pombo*, 984 F. Supp. 2d 1042, 1046–47 (E.D. Cal. Oct. 23, 2013) (though enhanced damages inappropriate, $250 awarded for a § 605(a) violation where defendants had a pay-per-view license and used their establishment to host family viewing party).

The court first addresses the second element of the CCA claim, divulging or publishing, and then the first and third together, interception and signal source.

### A. Divulge or Publish

The "act of viewing" constitutes "divulgement or publication." *See Seimon*, 767 F.2d at 1366. The parties do not dispute the Program was divulged or published, in that regardless of who was responsible, the Program was shown in Zitio's on Saturday, September 14, 2013. Eggert Decl. at 5; Req. for Admis. No. 13.

### B. Unauthorized Interception and Signal Source

Plaintiff and defendants dispute the elements of unauthorized interception and signal source. Defendants contend that a patron watched the event on a laptop without their authorization, permission, or knowledge. Opp'n at 8. They argue the patron receiving the

---

*Hand Prod., Inc. v. Behari*, No. 12-1522-KJM-AC, 2013 WL 1129311, at *4 (E.D. Cal. Mar. 18, 2013). While the Ninth Circuit has held § 605 applies to satellite communications, it has not explicitly excluded cable communications. *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) ("communications" protected by § 605(a) include satellite television signals). The court need not take sides in the split here because plaintiff "requests liability be found and damages awarded under § 605," Mot. at 5, or in the alternative, section 553, Mot. at 1, and as discussed there is insufficient evidence in the record regarding the signal source.

1  Program had authorization to do so, *id.* at 5, and there was no interception, *id*. at 7–8.  But
2  defendants do not point to any evidence in the record to identify the patron, or show there was
3  authorization for the individual's viewing the Program within Zitio's.  And while plaintiffs argue
4  an employee of Zitio's knew of the unauthorized interception, the sparse evidence in the record
5  merely raises this as a possibility at most.  Without any undisputed evidence establishing who
6  was responsible for any transmission of the Program, the court cannot grant summary judgment.
7             Moreover, with respect to the third argument, no undisputed facts establish the
8  kind of interception covered by the CCA.  As noted, because signal piracy is a "surreptitious
9  venture," courts have relied on circumstantial evidence in some cases to find unlawful
10 interception.  *Albright*, 2013 WL 2449500, at *5 (citing *Webb*, 545 F.3d at 844).  But this case is
11 unlike *Albright*, in which the court found the defendant unlawfully intercepted a satellite
12 broadcast, because the court could infer from circumstantial evidence which program was
13 exhibited at defendant's bar, the program was displayed publicly, and the bar had a lawful
14 television service, an antenna and satellite dish.  *Id.*  Here, plaintiff has not provided sufficient
15 evidence to establish a signal source.  *Joe Hand Promotions, Inc. v. Michael Cusi, et al.*, No. 13-
16 935, 2014 WL 1921760, at *2 (S.D. Cal. May 14, 2014) (summary judgment entered in
17 defendants' favor because plaintiff could not produce admissible evidence to support the signal's
18 source; the court also stated in dicta that it was "skeptical that feeds received over the internet
19 from a third party violate Sections 553 or 605.").  While defendants stated in discovery that the
20 signal came from "the internet," Resp. to Req. for Admis. No. 28, the record does not establish
21 that Zitio's has or had an internet account.  PUMF no. 4.  Plaintiff points to photographic
22 evidence of satellite fixtures attached to Zitio's exterior as evidence of defendants' liability under
23 section 605.  *See* Mot. at 5.  But plaintiff does not provide any evidence to forge a link between
24 the satellite fixture and the laptop computer or any internet transmissions in Zitio's.  *Cf. J & J*
25 *Sports Prods., Inc. v. Sandana*, No. 13-842, 2014 WL 3689283, at *4 (E.D. Cal. July 23, 2014)
26 (denying motion for summary judgment where customer brought an internet connection to
27 establishment to watch program).  Where the moving party will have the burden of proof at trial,
28 it must affirmatively demonstrate that no reasonable trier of fact could find other than for the

moving party. *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). Here, plaintiff has not so demonstrated. A half-baked admission of an unidentified Zitio's employee is not enough.

On the record before the court, a reasonable jury could find defendants did not intercept the Program or supply the signal source. At the same time, defendants have not ruled out the possibility that the satellite detectors on their building are theirs and served as the signal source for the Program. "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." *del Carmen Guadalupe v. Agosto*, 299 F.3d 15, 23 (1st Cir. 2002); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). In other words, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249–50; *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2005). Neither party has carried its burden.

The court DENIES both plaintiff's and defendants' motions for summary judgment on the CCA claims. The court need not reach the question of the applicability of §§ 553 and 605 to the internet, or statutory and enhanced damages under either section.

IV.   CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 (UCL)

A provision of California's Unfair Competition Law limits standing to bring a claim to specified public officials and any private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. Prof. Code § 17204. As above, because there is insufficient evidence in the record with respect to interception and signal source to show plaintiff has suffered injury in fact, the court need not reach this claim. Accordingly, the court DENIES plaintiff's and defendants' motions for summary judgment of this claim.

V.   CONVERSION

Under California law the elements of a conversion claim are "(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Mindys*

1 *Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (citing *Oakdale Vill. Group v. Fong*, 43 Cal. App. 4th 539, 543–44 (1996)); *L.A. Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387 (2012). The act of conversion "must be done knowingly or intentionally done, but a wrongful intent is not necessary." *In re Peklar*, 260 F.3d 1035, 1037 (9th Cir. 2001); *Taylor v. Forte Hotels Int'l*, 235 Cal. App. 3d 1119, 1124 (1991).

Plaintiff alleges defendants' acts of "interception, reception, publication, divulgence, display and/or exhibition of the Program at their commercial establishment . . . tortiously obtained possession of the Program and wrongfully converted the same . . ." in support of its separate common law conversion claim. Because genuine disputes of material fact exist with respect to interception and signal source, summary judgment is not available on the conversion claim. *See J & J Sports Prods., Inc. v. Bath*, No. 11-1564, 2013 WL 5954892, at *8 (E.D. Cal. Nov. 7, 2013).

With respect to punitive damages for conversion, plaintiff does not oppose defendants' motion for summary judgment on this form of relief. ECF No. 36 at 11. The court DENIES plaintiff's motion for summary judgment on the conversion claim. The court GRANTS defendants' motion for summary judgment on punitive damages for conversion and DENIES their motion on the balance of the conversion claim.

## VI. COSTS AND FEES

In light of the court's decision above regarding 47 U.S.C. §§ 553, 605, the court DENIES plaintiff's motion for summary judgment on costs and fees.

## VII. CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion for summary judgment on punitive damages on the conversion claim, DENIES the balance of all the parties' motions, and STRIKES Jacob Matta's declaration.

IT IS SO ORDERED.

DATED: May 16, 2016.

_____
UNITED STATES DISTRICT JUDGE